UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATALIE HEATH, aka | § | |
| HAZEL/PEPPER, an individual; | § | |
| BRENNA WILDER, an individual; | § | |
| TARA HEADRICK, an individual; | § | |
| KIARA HOPKINS, an individual, | § | |
| VANESSA RAMON, an individual, | § | Case No.: 1:20-cv-00890-RP |
| ANDREA HARRIS, an individual, | § | |
| AMANDA LANGLEY, an individual, | § | |
| *Plaintiffs,* | § | JURY TRIAL DEMANDED |
| v. | § | |
| | § | |
| TFS DINING, LLC and RPM DINING, | § | |
| LLC d/b/a YELLOW ROSE, *et al.,* | § | |
| *Defendants,* | § | |
| | § | |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Natalie Heath, Brenna Wilder, Tara Headrick, Kiara Hopkins, Vanessa Ramon, Andrea Harris, and Amanda Langley (collectively, "Plaintiffs") file this Motion for Partial Summary Judgment and request entry of a partial summary judgment against Defendants on the following issue: Plaintiffs were misclassified as independent contractors when they were in fact employees at Defendants' club, Yellow Rose, in Austin, Texas. In support thereof, pursuant to the Federal Rules of Civil Procedure, Plaintiffs would show this Honorable Court as follows:

# TABLE OF CONTENTS

INTRODUCTION & PROCEDURAL BACKGROUND ................................................................. 1

I.  LEGAL STANDARDS ................................................................................................. 6

    (a) Summary Judgment Standards.. ..................................................................... 6

    (b) "Employees" under the FLSA................................................................... 6

    (c) The Economic Realities Test. .......................................................................... 7

    (d) "Labels" Put on the Relationship are Immaterial..................................... 9

    (e) Whether a Worker is an Employee for FLSA Purposes is a Question of Law. .................. 8

II.  SUMMARY JUDGMENT ON THE ISSUE OF PLAINTIFFS' MISCLASSIFICATION AND EMPLOYEE STATUS IS APPROPRIATE. ................................................................................ 9

III.  DEFENDANTS EXERCISED SIGNIFICANT CONTROL OVER DANCERS, INCLUDING PLAINTIFFS, AT YELLOW ROSE. ................................................................... 11

IV.  DEFENDANTS WERE IN CONTROL OF PLAINTIFFS' OPPORTUNITY FOR PROFIT OR LOSS  14

V.  DEFENDANTS' INVESTMENT INTO YELLOW ROSE GREATLY EXCEEDS PLAINTIFFS' INVESTMENT IN WORK ATTIRE........................................................................ 16

VI.  NO SPECIAL SKILL IS REQUIRED TO PROVIDE ADULT ENTERTAINMENT DANCES ........... 17

VII.  PLAINTIFFS WERE HIRED TO WORK AT YELLOW ROSE INDEFINITELY ........................... 18

VIII.  PLAINTIFFS' SERVICE, ADULT ENTERTAINMENT DANCING, IS AN INTEGRAL PART OF DEFENDANTS' BUSINESS AS AN ADULT GENTLEMEN'S CLUB ........................... 19

CONCLUSION AND PRAYER ................................................................................. 20

CERTIFICATE OF SERVICE ................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Amiable v. Long and Scott Farms,* 20 F.3d 434, 439-440 (11th Cir. 1994) ............................. 8, 19

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................. 6

*Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996) .................................................. 8

*Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668 (1st Cir. 1998)..........................7, 9

*Berry v. Great American Dream, Inc.,* No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) ………………………………………………………………………...………10

*Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042 (5th Cir. 1987)……………..…………………..8

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988)………………….…………………8

*Butler v. PP & G, Inc.,* No. WMN-13-430, 2013 WL 5964476 (D. Md. Nov. 7, 2013) ….....…..10

*Carter v. Dutchess Community College,* 735 F.2d 8 (2d Cir.1984)) ............................... 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 7

*Clincy v. Galardi South Enter., Inc.,* 808 F.Supp.2d 1326 (N.D. Ga. 2011) …………… 10, 15, 16

*Collins v. Barney's Barn, Inc., et al.,* No. 4:12-cv-00685 SWW, 2013 WL 11457080 (E.D. Ark. Nov. 14, 2013) ........................................................................................ 10

*Crawford-El v. Britton*, 523 U.S. 574 (1998). .................................................. 6

*Dean v. 1715 Northside Drive, Inc.,* No. 1:14-cv-03775, Dkt. 102, (N.D. Ga. Jan. 14, 2017) ....... 10

*Gilbo v. Agment, LLC*, 2020 WL 759548, Case No. 19cv0767 (N.D. Ohio Feb. 14, 2020) ………..9

*Harrell v. Diamond A Entm't, Inc.,* 992 F.Supp. 1343 (M.D. Fla. 1997) ………………9, 14, 16, 20

*Hart v. Rick's Cabaret Int'l, Inc.,* 967 F.Supp.2d 901 (S.D.N.Y. 2013) ......................... 10

*Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299 (5th Cir. 1998)…………..7, 19

*Hopkins v. Cornerstone Am.,* 545 F.3d 338 (5th Cir. 2008)…………………………………... 7, 9

*Lanzetta v. Florio's Enterprises, Inc.,* 763 F. Supp. 2d 615 (S.D.N.Y. 2011), *on reconsideration,* No. 08 CIV. 6181 DC, 2011 WL 3209521 (S.D.N.Y. July 27, 2011) .................................. 17

*Levi v. Gulliver's Tavern, Inc.,* No. 15-216 WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) .... 10

*Lindsley v. BellSouth Telecomms. Inc.,* 401 Fed.Appx. 944 (5th Cir. 2010)……………………8

*Martin v. Circle C Invs., Inc.,* No. MO-91-CA-43, 1991 WL 338239 (W.D. Tex. 1991) …… 9, 17

*Martin v. Priba Corp.*, No. 3:91-CV-2786-G, 1992 WL 486911 (N.D. Tex. 1992) .......................11

*Martin v. Selker Bros.*, 949 F.2d 1286 (3d Cir. 1991); ....................................................... 9

*Mason v. Fantasy, LLC,* No. 13-cv-02020-RM-KLM, 2015 WL 4512327
(D. Colo. July 27, 2015) ....................................................................................................10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)……. .................. ….7

*McFeeley v. Jackson St. Ent., LLC, 47 F.Supp.3d 260 (D. Md. 2014)* ........................................ 10

*Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir. 1975) ..................................8, 9, 10, 11

*Morse v. Mer Corp.,* No. 1:08-CV-1389-WTL-JMS, 2010 WL 2346334 (S.D. Ind. 2010) ………11

*Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986) .................................................................... 8

*Pizzarelli v. Cadillac Lounge, L.L.C.*, 2018 WL 2971114 (D.R.I. Apr. 13, 2018) ........................ 8

*Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) ....................................................................7

*Reich v. Circle C. Invs., Inc.,* 998 F.2d 324 (5th Cir. 1993) …………………………8, 9, 11, 14, 17

*Reich v. Priba Corp.*, 890 F.Supp. 586 (N.D. Tex. 1995) ....................................................... …...11

*Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). ...... ......8

*Scantland v. Jeffry Knight, Inc.,* 721 F.3d 1308 (11th Cir. 2013)…………………………………9

*Sigui v. M + M Commc'ns, Inc.,* 484 F. Supp. 3d 29, 36 (D.R.I. 2020)……………………………8

*Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007) .................................................................. 8

*Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. Jan. 12, 2021), ........................ 1

*Thompson v. Linda And A., Inc.,* 779 F. Supp. 2d 139 (D.D.C. 2011) ...........................................11

*Thornton v. Crazy Horse, Inc.,* No. 3:06-CV-00251-TMB, 2012 WL 2175753 (D. Alaska June 14, 2012) ................................................................................................................................11

*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985)................................................................................................................................ 7

*Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308 (5th Cir. 1976)........................................................ 8, 10

*Vaughn v. Paradise Entm't Group, Inc.,* No. 14-CV-00914-SCJ, Dkt.190, (N.D. Ga. Mar. 15, 2016) (summary judgment) .................................................................................................................. 10

*Verma v. 3001 Castor, Inc.,* No. 13-3034, 2014 WL 2957453 (E.D. Pa. June 30, 2014) (*aff'd by Verma v. 3001 Castor, Inc.,* 937 F.3d 221 (3d. Cir. 2019)) ............................................... 10

*Villareal v. Woodman*, 113 F.3d 202 (11th Cir. 1997) ..................................................................... 11

*Watson v. Graves*, 909 F.2d 1549 (5th Cir. 1990) ........................................................................... 14

*Williams v. Henagan*, 595 F.3d 610 (5th Cir.2010) ......................................................................... 11

## Statutes

29 U.S.C. §§ 201, *et seq.* ....................................................................................................................... 1

29 U.S.C. § 203......................................................................................................................................... 8

## INTRODUCTION & PROCEDURAL BACKGROUND

1.      Plaintiffs Natalie Heath ("Heath"), Brenna Wilder ("Wilder"), Tara Headrick ("Headrick"), and Kiara Hopkins ("Hopkins") originally filed this suit against Defendants on August 26, 2020 as a putative collective action pursuant to the Fair Labor Standards Act ("FLSA"). 29 U.S.C. §§ 201, *et seq.  (*Dkt. 1, Orig. Comp.). Notices of three opt-in plaintiffs, Vanessa Ramon ("Ramon"), Amanda Langley ("Langley"), and Andrea Harris ("Harris"), were filed and served pursuant to Section 216(b) of the FLSA in September and November 2020. (Dkt. 10, 15, 16).

2.      On May 21, 2020, Heath, Wilder, Headrick, Hopkins, Ramon, Langley, and Harris (collectively, "Plaintiffs') jointly filed their First Amended Complaint. (Dkt. 36). Plaintiffs worked as exotic dancers at Defendants' adult entertainment club, Yellow Rose in Austin, Texas ("the Club" or "Yellow Rose") and assert they were misclassified by Defendants as independent contractors, even though they were employees under the FLSA. *Id*. at ¶¶ 2, 67, 119, 127.

3.      Written discovery has been completed, and all depositions have been taken with the exception of Hopkins' deposition. Trial is set for May 16, 2022. (Dkt. 40).

4.      Based on the summary judgment evidence filed with this Motion in the attached Appendix, pleadings, and other materials in the record, Plaintiffs move for a partial summary judgment that Plaintiffs were misclassified as independent contractors by Defendants when they were in fact employees under the FLSA. As demonstrated herein, the economic reality is Plaintiffs were entirely dependent on Yellow Rose for their economic opportunities, and Defendants exerted significant control over Plaintiffs while they were working as dancers at Defendants' Club. When considering all of the evidence, the totality of the circumstances demands the conclusion that Plaintiffs were employees of Yellow Rose as a matter of law. As such, Plaintiffs' Motion for Partial Summary Judgment should be granted.

## STATEMENT OF MATERIAL FACTS

5.      Yellow Rose Cabaret is an adult entertainment dance club in the heart of Austin, Texas that

1

offers topless dances to its customers. *See* Pl. First Amend. Comp., Dkt. 36 at ¶¶ 32-33; Heath Depo. 89:8-9.  Yellow Rose is located at 6528 N Lamar Blvd, Austin, TX 78757 and advertises itself as being the "premier day and night club" in Austin,  "providing patrons **with the world's most beautiful entertainers**, five-star kitchen service and a comfortable club atmosphere." *See* Ex. O, Yellow Rose Google Page Message from Club (emphasis added).

6.     It is undisputed that Plaintiffs all worked as dancers at Yellow Rose between 2017 and 2020 and were all classified as "independent contractors" by Defendants pursuant to "The Yellow Rose Entertainer License Agreement" Defendants required Plaintiffs to sign in order to work as an entertainer at Yellow Rose. Ex. H M. Persinger Depo. 44:11-45:8; YR Entertainer License Agreements Signed by Plaintiffs at Exhibits A-1, B-1, C-1, D-1, E-1, F-1, and G-1.

7.     Plaintiff Vanessa Ramon worked at Yellow Rose from August 19, 2015 to September 13, 2020. Ex. A, Ramon Depo. 130:15-25. Ms. Wilder worked at Yellow Rose from June 1, 2016 to November 30, 2017 and from June 1, 2018 to July 15, 2018.  Ex. B, Wilder Depo.: 18:10-19:12, 19:22-20:4.  Langley worked at Yellow Rose from 2013-2014 through September 21, 2020, when she was terminated by Defendants. Ex. C, Langley Depo. 84:13-18; Ex. C-2, YellowRose_000166, YR_000207, YR_000261. Plaintiff Harris worked at Yellow Rose from spring of 2015 to September 21, 2020, when she was terminated by Defendants. Ex. D, Harris Depo. 9:8-12,  55:4-11; Ex. D-2, YR_000268, YR_000309, YR_000357. Ms. Headrick worked at Yellow Rose during various periods from 2016 through November of 2018. Ex. E, Headrick Depo. 85:9-16; Ex. E-2, YR_000100. Ms. Heath was hired to work as a dancer at Yellow Rose in February of 2019 and worked there until the beginning May or early June of 2019.  Ex. F, Heath Depo. 52:21-53:2; Ex. F-1, YR_000004-YR_000013. Ms. Hopkins worked at Yellow Rose from July 2, 2019 to February of 2020. Ex. G, YR_000019, YR_000025, Ex. G-1, YR_000020– YR_000024; *see also* Dkt. 36 at ¶ 36.

8.     Defendants Jon and Mike Persinger ("J. Persinger" AND "M. Persinger") and Jonathan Joseph ("Joseph") were co-owners of Yellow Rose during the relevant period applicable to Plaintiffs' FLSA

claims. *See* Ex. O, Def. RPM Dining, LLC's ("RPM" or "Yellow Rose") Ans. to Second Set of Interrogatories, at Rog. No. 21; M. Persinger Depo. 4:9-6:11. Presently, M. Persinger is "a consultant with Yellow Rose." M. Persinger Depo. 4:9-6:11.

9.      Defendant Eddie Gonzales ("Gonzales") has worked as a manager at Yellow Rose for nearly 4 years and currently serves as the Club's general manager.  *See* Ex. J, Gonzales Depo. 9:19-10:11. Ricky Balderama and Kenny Mare also managers at Yellow Rose that one or more of the Plaintiffs worked with during the relevant periods applicable to their respective claims. See Ex. L, Balderama Depo. 4:18-5:3; Ex. M, Myers Depo. 5:9-14

10.      Yellow Rose is open 7 days a week and stays open until 4:00 a.m. on Thursdays, Fridays, and Saturdays and 2:00 a.m. every other day of the week.  Gonzales Depo. 14:15-16.  Yellow Rose's current general manager, Eddie Gonzales, stated that Yellow Rose's operating hours are determined and set by the Club's owners, who he identified as being J. Persinger, M. Persinger, and Jonathan Joseph, the Club's "operating owner." Gonzales Depo. 13:25-14:24.  As dancers can only work during the times Yellow Rose is open, dancers must abide by Yellow Rose's operating hours, even if customers are willing to stay later to pay for dances.

11.      The primary form of entertainment at Yellow Rose is topless dancing, or live adult entertainment through female sexually oriented dancing. *See* Ex. Q, YR Website – About Us (""It remains the #1 hot spot for live adult entertainment, providing patrons with the world's most beautiful entertainers…"). To work at Yellow Rose as a dancer, Plaintiffs must simply enter the Club, present to "any manager on-duty," show identification, and complete the necessary paperwork required by the Club, and sign The Yellow Rose Entertainer License Agreement. *See* Gonzales Depo. 32:14-33:9; M. Persinger Depo. 44:11-45:8; YR Entertainer License Agreements Signed by Plaintiffs at Exhibits A-1, B-1, C-1, D-1, E-1, F-1, and G-1. Any of Yellow Rose's managers have the authority to hire dancers, but dancers do not have that authority. Gonzales Depo. 29:5-21.

12.      Yellow Rose sets the prices for all dances at the club. Yellow Rose set the base price dancers,

including Plaintiffs, could charge a customer for a lap dance at $20 per dance, and entertainers are informed of this upon being hired and through postings in the dressing room.  M. Persinger Depo. 51-16-19, 52:10-12; Wilder Depo. 89:22-90:10; Harris Depo. 91:9-92:18; Ramon Depo. 141:3-10; Heath Depo. 35:11-13.  Yellow Rose also sets the prices for VIP areas or cabana fees charged to customers, which varied based on the duration of time the customer wanted the VIP room, which was also set by Yellow Rose. Ramon Depo. 134:5-135:15, 141:8-25; Harris Depo. 115:9-22.

13.     Dancers are required to "check in" with the door girl when arriving to work at Yellow Rose, get dressed and "performance ready" and then, check in with the DJ to be added to the Club's mandatory stage rotation for all dancers. M. Persinger Depo. 23:13-23; Ramon Depo. 137:15-18; Wilder Depo. 141:12-22, 143:9-23; Headrick Depo. 86:3-13; Heath Depo. 43:14-19, 71:8-19. Entertainers can only skip their turn in the mandatory stage rotation by paying a $20 "skip" fee. Wilder Depo. 143:9-23; Heath Depo. 54:14-55:1; Ramon Depo. 133; Langley Depo. 40:1-41:8. Management also directs dancers to take their tops off by the second song when performing on stage, both verbally and by posting flyers in the dressing room. Harris: 32:10-33:4, 34:22:25; Wilder Depo. 69:25-70:6.  Also, upon finishing their shift, entertainers are required to check out with both DJ and management and get what the Club refers to as "bye-bye" slip signed by both before they can leave the Club, which also allowed management to enforce the requirement that entertainers work at least 6-7 hours anytime they worked a shift at the Club.  Ramon Depo. 136:6-18; Wilder Depo. 143:9-23; Langley Depo. 40:1-21; Headrick Depo. 86:3-13; Harris Depo. 40:10-20, 141:7-10; Heath Depo. 52:12-14, 71:8-19; *see also* M. Persinger Depo. 23:13-23**.**

14.     Yellow Rose charges entertainers a "house fee" in order to work at the Club in an amount set by the Club, which increases the later a dancer arrives during the shift. M. Persinger Depo. 12:17-25, 13:21-14:25; Ex. R, YR House Fees ("License Fees"); Ramon Depo. 132:5-13; Headrick Depo. 99:5-10; Wilder Depo. 148:10-19; Langley Depo. 99:22-100:1; Harris Depo. 109:15-24.

15.     Yellow Rose controls who can enter and leave the club, not the dancers, by setting a dress

4

code for customers that is enforced by management and determining the amount of the cover charge customers must pay to gain entry to the Club and what hours of the day the Club will and will not require customers to pay a cover charge to gain entry. J. Persinger Depo. 36:12-21; Gonzales Depo. 13:25-14:24, 19:23-20:15. The Club also has a "two-drink minimum" for all customers wishing to gain entry to the Club.  Gonzales Depo. 21:18-22.

16.     At the end of Plaintiffs' shifts, it was expected and customary for them to tip Yellow Rose employees, such as the DJ, Door Girl, and each of the 2-3 managers working that shift. Ramon Depo. 132:14-133:8, 133:17-134:4, 137:19-22; Wilder Depo. 141:12-22; Heath Depo. 66:12-19, 67:10-16; Headrick Depo. 89:14-25, 106:12-21; Langley Depo. 40:1-41:8, 42:11-25.  If they did not tip, the dancer would not be treated well by Yellow Rose and would have their work or ability to work jeopardized.  *Id.; see also* M. Persinger Depo. 81:1-19.

17.     Dancers can be fired or have their "License Agreement" terminated by Yellow Rose for whatever reason, as demonstrated by Plaintiffs Harris and Langley, who were fired on the same day by manager, Eddie Gonzales, as a result of a dispute with a customer. Harris Depo.: 53:10-55:11; Langley Depo. 84:33-88:11.  As such, disputes between a customer and dancer are resolved by Yellow Rose.  Additionally, Yellow Rose's management effectively forces entertainer to perform for customers, even if they do not want to, because if a customer complains to a manger because a dancer declined to perform for him, the dancer may be reprimanded or fired by management. Harris Depo. 69:18-70:1; Langley Depo. 15:15-23, 16:1-29.

18.     No special skills or experience are required to work as an entertainer at Yellow Rose. Gonzales Depo. 32:14-33:9; *see also* Ramon Depo. 112:16-20; Wilder Depo. 146:13-22; Headrick Depo. 99:17-23; Harris Depo. 133:4-14; Heath Depo. 62:6-7, 62:13-15.

19.     Yellow Rose—not Plaintiffs or entertainers of the Club—pays for the facilities, maintenance of the facilities (e.g., lighting, electrical, air conditioning, painting), utilities, furniture and fixtures, insurance, licensing, food and beverages and other supplies or goods the Club. furniture, electrical,

5

advertising, and payroll for all Club workers or staff other than entertainers, M. Persinger Depo. 56:24-59:5, 60:3-61:2[1], who are the only Club workers NOT classified as employees. *Id*. at 53:12-14.

## ARGUMENT & AUTHORITIES

### I.   LEGAL STANDARDS

20.    **(a) Summary Judgment Standards**. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id*. The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant does so, then the burden shifts to the nonmoving party to demonstrate that there are, in fact, genuine factual disputes that preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

21.    **(b) "Employees" under the FLSA.**  The requirements of the FLSA apply only to employees. An "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines "to employ" as "to suffer or permit to work." 29 U.S.C § 203(g), and an "employer" as "any person acting . . . in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The purpose of the FLSA is to "protect those whose livelihood is dependent upon finding employment within the business of others." *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 300 (5th Cir. 1975).

---

[1] *See als*o Ex. N, Excerpts from Club's Financial Records re: Income from House Fees Paid Collected from 2017 to 2020 and  Ex. S, Summary of Club's Yearly Expenditures, Net Income, and Gross Revenues (**Pending Motion to File Under Seal**).

Importantly, the FLSA has been **construed liberally** to ensure that it **"applie[s] even to those who would decline its protections"** because **"employers might be able to use superior bargaining power to coerce employees to ... waive their protections under the Act**." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (emphasis added).

22.     **(c) The Economic Realities Test.** In determining whether an individual is a covered "employee" or exempted independent contractor, the Fifth Circuit—like many other Circuits—uses the "economic reality" test to evaluate the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence. *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 327 (5th Cir. 1993). Courts employ the "economic reality" test to determine if a person is an employee, and thereby entitled to FLSA's protections. *See Baystate Alternative Staffing, Inc. v. Herman,* 163 F.3d 668, 675 (1st Cir. 1998). Six factors guide the "economic reality" test analysis: (1) the nature and degree of the alleged employer's control as to the manner the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required to her task, or her employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the service rendered is an integral part of the alleged employer's business. *See Herman v. Express Sixty-Minutes Delivery Serv., Inc.,* 161 F.3d 299, 303 (5th Cir. 1998); *Martin v. Circle C. Invs., Inc.,* No. MO–91–CA–43, 1991 WL 338239, at *4 (W.D. Tex. Mar. 27, 1991); *Martin v. Selker Bros.*, 949 F.2d 1286, 1292 (3d Cir. 1991); *see also Circle C.,* 998 F.2d at 327. These six factors are not exclusive, and no single factor is dominant. *Herman,* 161 F.3d at 303; *Circle C*., 998 F.2d at 327. The question to be determined by the Court is whether the totality of the circumstances demonstrate that the person is "a putative employee economically dependent on their alleged employer." *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 343 (5th Cir. 2008); *see also Tony & Susan Alamo Found*, 471 U.S. at 301.

7

23.    **(d) "Labels" Put on the Relationship are Immaterial.** When applying the economic realities test, the parties' subjective beliefs and expectations, as well as the labels they place on their relationship, are immaterial; stated differently, "[t]his inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'" *Scantland v. Jeffry Knight, Inc.,* 721 F.3d, 1311-12 (11th Cir. 2013) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772 (1947). "[P]utting on an 'independent contractor' label does not take the worker from the protection of the Act." *Id*.; *see also Usery v. Pilgrim Equip. Co*., 527 F.2d 1308, 1312 (5th Cir.1976) ("It is not significant how one 'could have' acted under the contract terms). These factors are used because they are "indicators of economic independence." *Antenor v. D & S Farms*, 88 F.3d 925, 931-932 (11th Cir. 1996) (citing *Amiable v. Long and Scott Farms,* 20 F.3d 434, 439-440 (11th Cir. 1994)). [T]he weight of each factor depends on the light it sheds on the [alleged employee's] dependence [or lack thereof] in the alleged employer, which in turn depends on the facts of the case." *Id.*

24.    **(e) Whether a Worker is an Employee for FLSA Purposes is a Question of Law.**

25.    Whether Plaintiffs were employees under the FLSA and thereby misclassified by Defendants as independent contractors is a question of law for this Court. *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1045 (5th Cir. 1987); *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 240 (4th Cir. 2016); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988); *Sigui v. M + M Commc'ns, Inc.,* 484 F. Supp. 3d 29, 36 (D.R.I. 2020); *Pizzarelli v. Cadillac Lounge, L.L.C.*, 2018 WL 2971114, at *2–3 (D.R.I. Apr. 13, 2018). The determination of whether plaintiffs are employees under the FLSA is a legal, not a factual, finding, and thus, may properly be determined by this Court. *Lindsley v. BellSouth Telecomms. Inc.,* 401 Fed.Appx. 944, 945 (5th Cir. 2010) (citing *Brock,* 814 F.2d at 1045 (5th Cir. 1987); *see also Patel v. Wargo*, 803 F.2d 632, 632 n.1 (11th Cir. 1986). The Court determines whether a worker qualifies as an employee under the FLSA by focusing on

"whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins,* 545 F.3d at 343. Courts employ the "economic reality" test to determine if a person is an employee and thereby entitled to FLSA's protections. *Baystate,* 163 F.3d at 675.

## II.   SUMMARY JUDGMENT ON THE ISSUE OF PLAINTIFFS' MISCLASSIFICATION AND EMPLOYEE STATUS IS APPROPRIATE.

26.     For over a quarter of a century district and circuit courts of appeal have repeatedly ruled that exotic dancers are employees under the FLSA.  Most district courts grant summary judgment for plaintiffs on this issue.[2] *See e.g., Schofield v. Gold Club Tampa, Inc.*, 2021 WL 533540 (M.D. Fl. Feb. 2, 2021) (granting partial summary judgment on issue of classification); *Gilbo v. Agment, LLC*, 2020 WL 759548, Case No. 19cv0767 (N.D. Ohio Feb. 14, 2020) (summary judgment for plaintiffs) (upheld by Sixth Circuit in *Gilbo v. Agment, LLC*, 831 Fed.Appx. 772 (6t Cir. 2020); *Lester v. Agment, LLC*, 2016 WL 1588654, case no. 15cv886 (N.D. Ohio, April 20, 2016) (granting summary judgment for plaintiffs under FLSA and Ohio law); *Hurst*, 354 F.Supp.3d 1362 (N.D. GA 2019) (summary judge for dancers, individual owners are employers, fees from customers were tips, not service charge); *Harrell*, 992 F.Supp. at 1348 (M.D. Fla. 1997) (There is no debate, as a matter of law, that exotic dancers such as the putative class members in this matter are "employees" under the FLSA); *Clincy,* 808 F.Supp.2d 1326 (N.D. Ga. 2011) (summary judgment); *Stevenson,* 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013) (same); *Berry v. Great American Dream, Inc*., No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) (club collaterally estopped from re-litigating issue that entertainers are independent contractors rather than employees); *Vaughn v. Paradise Entm't Group, Inc.*, No. 14-CV-00914-SCJ, Dkt. 190, (N.D. Ga. Mar. 15, 2016) (summary judgment for plaintiff); *Dean v. 1715 Northside Drive, Inc.*, No. 1:14-CV-03775-CAP, Dkt. 102 (N.D. Ga. Jan. 14, 2017) (same); *McFeeley v. Jackson St. Ent*., *LLC*, 47 F. Supp. 3d 260, 279 (D. Md. 2014), *aff'd*, 825 F.3d

---

[2] This list does not include cases where the defendant's summary judgment was denied, and there was no counter motion from plaintiff.

235 (4th Cir. 2016) ("Considering all six factors together, particularly the defendants' high degree of control over the dancers, the totality of circumstances speak clearly to an employer-employee relationship."); *Pizzarelli v. Cadillac Lounge, LLC*, 2018 WL 2971114 (D. R.I. Apr. 13, 2018) (granting summary judgment for plaintiffs under FLSA and Rhode Island law); *Mason v. Fantasy, LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D. Colo. July 27, 2015); *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014) (*aff'd by the Third Circuit in Verma v. 3001 Castor, Inc.*, 937 F.3d 221 (3d. Cir. 2019): *Levi,* 2018 WL 10149710 (D.R.I. Apr. 23, 2018) (granting dancer plaintiff's partial summary judgment that they are employees under the FLSA); *Hart v. Rick's Cabaret Intern., Inc.*, 967 F. Supp. 2d 901, 912-913 (S.D.N.Y. 2013) (granting summary judgment for plaintiffs under FLSA and New York law); *Collins v. Barney's Barn, Inc.*, *et al.*, 2013 WL 11457080 (E.D. Ark. Nov. 14, 2013) (granting summary judgment for plaintiffs under FLSA); *Butler,* 2013 WL 5964476, at *9 (D. Md. Nov. 7, 2013) *reconsideration denied*, 2014 WL 199001 (D. Md. Jan. 16, 2014) (same); *Thornton v. Crazy Horse*, *Inc.*, 2012 WL 2175753 (D. Alaska June 14, 2012); *Thompson v. Linda And A., Inc.,* 779 F. Supp. 2d 139, 150-51 (D.D.C. 2011) (granting summary judgment for plaintiffs under FLSA and District of Columbia law); *Morse v. Mer Corp.,* No. 1:08-CV-1389-WTL-JMS, 2010 WL 2346334, at *6 (S.D. Ind. June 4, 2010) (finding that Plaintiffs were employees, and not independent contractors, and granting plaintiffs' motion for summary judgment); *Foster v. Gold & Silver Priv. Club, Inc.*, 2015 WL 8489998, at *5 (W.D. Va. Dec. 9, 2015) (finding that Plaintiffs were employees within the meaning of the FLSA); *Martin v. Priba Corp.*, No. 3:91-CV-2786-G, 1992 WL 486911, at *5 (N.D. Tex. 1992) (denies employer's summary judgment and grants, *sua sponte*, partial summary judgment for plaintiff); *Circle C.*, 998 F.2d at 330 (5th Cir. 1993); *Espizona v. Galardi South Enterprises.*, 2018 WL 1729757) (S.D. Fl. April 10, 2018) (Dancers are Employees on Cross Motions for Summary Judgment); *Gardner v. Country Club, Inc.*, 2015 WL 7783556, at *12 (D.S.C. June 3, 2016) (granting partial summary judgment for plaintiffs under FLSA); *Kimbrel v. DEA Corp.* , 2016 WL 7799340 (E.D. Tenn. August

10

2, 2016) (granting partial summary judgment for plaintiffs under FLSA).[3]

27.     The independent contractor arguments of adult entertainment clubs, like Yellow Rose, have been summarily rejected by district courts and circuit courts across the United States. The weight of the decisions is not close.  This case is no different.  Plaintiffs' summary judgment evidence shows that the totality of the circumstances demonstrate that Plaintiffs were economically dependent on Yellow Rose. When there is no dispute over the sufficiency of evidence establishing the facts that control the application of a rule of law, summary judgment is the appropriate means of deciding the issue. *See, e.g., Edwards v. Aguillard*, 482 U.S. 5781 (1987). This Court, like the countless other courts before it, should grant summary judgment that Plaintiffs were employees of Yellow Rose.

### III.     DEFENDANTS EXERCISED SIGNIFICANT CONTROL OVER DANCERS, INCLUDING PLAINTIFFS, AT YELLOW ROSE.

28.     Among others, the following is relevant to the control inquiry under the economic reality test: "whether the alleged employer (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir.2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990) (citing *Carter v. Dutchess Community College,* 735 F.2d 8, 12 (2d Cir.1984)); *see also Villareal v. Woodman*, 113 F.3d 202, 205 (11th Cir. 1997).

29.     Here, Defendants exercised significant control over Plaintiffs as dancers working at Yellow Rose. *See supra* at ¶¶ 10-20. Defendants, not dancers, set the Club's rules, policies, and procedures. *Id*. Defendants required dancers to work only during the time Yellow Rose is open, during the Club's operating hours, which are set by Yellow Rose. Gonzales Depo. 13:25-14:24. In order to work any particular shift, dancers at Yellow Rose must pay a house fee set and required by the Club.  M. Persinger Depo. 12:17-25; Ex. R, YR House Fees ("License Fees"); Ramon Depo. 132:5-13;

---

[3] Copies of these opinions can be accessed at:
https://www.dropbox.com/sh/m4e0z3pw4g2ul07/AACpwnqL3T2SkPEsEBAUA9ija?dl=0 .

Headrick Depo. 99:5-10; Wilder Depo. 148:10-19; Langley Depo. 99:22-100:1; Harris Depo. 109:15-24. Yellow Rose does not base this purported "license fee" on any concrete criteria and the house fee increases the later a dancer arrives during a shift to incentivize dancers presenting to the Club for work earlier in the day—another mechanism Defendants use to control entertainers and their work at the Club. M. Persinger Depo. 12:17-25, 13:21-14:25. Thus, Yellow Rose's house or license fee policy is really a penalty program designed to require when dancers would arrive to work, since the later they arrived to the Club to work, the greater the fee they had to pay. *Id*.

30.     Defendants also controlled the conditions under which Plaintiffs worked. Dancers were required to check in with the door girl and DJ when arriving to work at Yellow Rose, Ramon Depo. 137:15-18; Wilder Depo. 141:12-22, 143:9-23; Headrick Depo. 86:3-13; Heath Depo. 43:14-19, 71:8-19, ***and*** to check out with DJ and management to get their "bye-bye" slips signed when they left work. Ramon Depo. 136:6-18; Wilder Depo. 143:9-23; Langley Depo. 40:1-21; Headrick Depo. 86:3-13; Harris Depo. 40:10-20, 141:7-10; Heath Depo. 52:12-14, 71:8-19.

31.     Defendants had the authority to hire and fire dancers and other Club employees—not dancers. Harris Depo. 53:10-55:11; Langley Depo. 84:33-88:11. Yellow Rose controls who can enter and leave the club,not the dancers. J. Persinger Depo. 36:12-21; Gonzales Depo. 13:25-14:24, 19:23-20:15.

32.     Defendants set the base price customers expected to be charged for lap dances at $20. M. Persinger Depo. 51:16-22, 52:10-12. Plaintiffs testified they were instructed that the price for a lap dance at the Club was $20 per dance, and the Club tells entertainers this upon being hired and through postings in the dressing room. *Id*.; Wilder Depo. 89:22-90:10; Harris Depo. 91:9-92:18; Ramon Depo. 141:3-10; Heath Depo. 35:11-13. The Club also sets prices for VIP areas or cabana fees charged to customers, which varied based on the duration of time the customer wanted the VIP room, which was also set by Yellow Rose.  Ramon Depo. 134:5-135:15, 141:8-25; Harris Depo. 115:9-22.  The "cabana" fee paid directly to the Club or manager, who then gives the entertainer here portion of the fee after taking the Club's/manager's 20 percent.  *Id*.  In part, this allows adult entertainment clubs,

like Yellow Rose, as the VIP hosts, to ensure that the money is paid to the club in advance of the dances being performed by the dancers and that Yellow Rose's percentage of the customer fees paid for dances is paid upfront.

33.     Dancers are required to dance on stage when their names are called by the DJ for a set predetermined by the club and would be charged a skip fee for missing their turn in the stage rotation. Wilder Depo. 143:9-23; Heath Depo. 54:14-55:1; Ramon Depo. 133; Langley Depo. 40:1-41:8. Yellow Rose's managers also directed dancers to take their tops off by the second song when performing on stage, both verbally and by posting flyers in the dressing room. Harris: 32:10-33:4, 34:22:25; Wilder Depo. 69:25-70:6.

34.     Yellow Rose classifies dancers as independent contractors and thus, does not pay itsdancers any wages, who are left instead to rely on the money charged to customers to pay dancers, often not released to Plaintiffs until the end of their shifts. Yellow Rose not Plaintiff, had the authority to resolve disputes with customers.  Harris Depo.: 53:10-55:11; Langley Depo. 84:33-88:11.

35.     Plaintiffs were dependent on Defendants in establishing, maintaining, and operating the Club. M. Persinger Depo. 57:13-60:22; *see also* Ex. N, Financial Ledgers for Yellow Rose; Headrick Depo. 122:18-124:5. Yellow Rose sets the operating hours, the amount of the cover charge customers must pay a cover charge to gain entry into the Club and the hours of the day that cover charge will and will not be assessed to customers.  Gonzales Depo. 13:25-14:24, 19:23-20:15. The Club also sets the dress code customers must comply with to gain entry into the Club and the dress code is enforced by management per owner Jon Persinger's deposition testimony.   J. Persinger Depo. 36:12-21. Defendants also pay for the facilities, bills, supplies, utilities, dance poles, and advertising for the club, not the dancers. M. Persinger Depo. 57:13-60:22; see also Ex. N, Financial Ledgers for Yellow Rose.

36.     In sum, it is undisputed Defendants exerted significant control over how Plaintiffs sold their services at Yellow Rose. Though Defendants may claim that Plaintiffs could choose which customer

to dance for and point to Plaintiffs' work schedules, a small measure of discretion, does not mean that dancers are elevated to the status of independent contractors. *See Harrell*, 992 F.Supp. at 1349. As the *Harrell* court stated, "the nature of a dancer's job requires some measure of discretion and flexibility." *Id.* The ultimate question is whether Plaintiffs exerted meaningful control over part of the business, which is a resounding "no." As summarized in *Priba Corp.*:

> [T]he real touchstone is the reality of the employment relationship. An entertainer at Cabaret Royale is **completely dependent on the club for her earnings. The club controls all advertising, without which the entertainers could not survive. Moreover, the defendants created and control the atmosphere and surroundings at the Cabaret Royale, the existence of which dictates the flow of customers into the club.** An entertainer can be considered an independent contractor only if she "exerts such control over a meaningful part of the business that she stands as a separate economic entity." **In this case, the entertainer's economic status is inextricably linked to those conditions over which defendants have complete control.**

890 F.Supp. at 592 (emphasis added).

37.     Plaintiffs danced at Yellow Rose pursuant to the rules, policies, and procedures established by Defendants that encompassed all aspects of Plaintiffs' work.  As Yellow Rose's general manager testified, when the Club hosts promotional events, the Club brings in more customers, affirming that the Club's hosting of promotional events effectively dictates the flow of customers into the Club. E. Gonzales Depo. 25:2-10.   Plaintiffs, as entertainers at Yellow Rose, had no say whatsoever in what promotional events the Club hosts or what day(s) of the week or hours of the day these events are held at the Club. In fact, Plaintiffs testified that the Club's promotional events often interfered with their ability to make money if they were working at the same time an event was happening. Heath Depo. 90:1-18;  Wilder Depo. 117:9-24, 118:20-25, 119:1-10.  As such, this factor weighs in favor of a finding that Plaintiffs were Defendants' employees.

## IV.   DEFENDANTS WERE IN CONTROL OF PLAINTIFFS' OPPORTUNITY FOR PROFIT OR LOSS

38.     The second factor is Plaintiffs' opportunity for profit or loss depending on their managerial skill.  Plaintiffs made money by selling dances to customers at Yellow Rose. Defendants controlled the club's customers by setting and enforcing customer dress code and the amount of the cover charge

14

customers are required to pay to gain entry into the Club, as well as the hours of the day customers are and are not required to pay a cover charge. J. Persinger Depo. 36:12-21; Gonzales Depo. 13:25-14:24, 19:23-20:15.  The amounts customers pay in cover charges to the Club are not shared with Plaintiffs or other dancers and are kept entirely by the Club as a profit.  E. Gonzales Depo. 20:13-15. The Club's dress code policies restricted customers who would be allowed entry into the Club. Further, Defendants would decide what promotional events would be held at the Club and when the events would take place.  E. Gonzales Depo. 25:2-10.  Plaintiffs did not have any input in the decision to host promotional events, or the days or times of day such events would take place, even though these events directly affected their ability to sell dances to customers—their only source of income. Heath Depo. 90:1-20;  Wilder Depo. 117:9-24, 118:20-25, 119:1-10. As previously stated, Defendants determined and set the Club's operating hours. Defendants and Yellow Rose's ownership and management set the price of dances and private cabanas, *see infra* at ¶¶ 13-33, as well as alcoholic beverages and food sold at the Club, J. Persinger Depo. 34:17-35:9, and  Plaintiffs as entertainers have no input regarding food or drink prices, or specials the Club ran on food and alcohol.  *Id*. In short, Plaintiffs were entirely dependent on Defendants providing customers at Yellow Rose. Defendants set the base price customers expected to be charged for lap dances at $20 under the guise of this somehow being the "universal" price for lap dances throughout the State of Texas.  M. Persinger Depo. 51:16-22. Defendants' control over setting the prices lessened Plaintiffs' and other dancers' ability to negotiate prices or have control over their own profits and loss.

39.     The evidence categorically demonstrates that Defendants controlled all aspects of Yellow Rose operation and thus, were in primary control of Plaintiffs' opportunity to make a profit. Defendants' opportunity for profit or loss was also far greater than Plaintiffs'. *See* Ex. N, Excerpts from Club's Financial Records re: Income from House Fees Paid Collected from 2017 to 2020; Ex. S, Summary of Club's Yearly Expenditures, Net Income and Gross Revenues from 2017 to 2020 Produced by Defendants. Though Defendants may argue that Plaintiffs could "hustle" to sell more

dances, the Fifth Circuit has specifically ruled that "the ability to develop and maintain rapport with customers is not the type of initiative contemplated by this factor." *Circle C.,* 998 F.2d at 328; see also *Harrell*, 992 F.Supp. at 1351-52 ("That a dancer may increase her earnings by increased 'hustling' matters little."). Further, Defendants may argue that Plaintiffs agreed to work solely for tips or attempt to submit evidence Plaintiffs earned substantially more than the minimum wage in tips, but this is likewise immaterial. *See Lanzetta v. Florio's Enterprises, Inc.,* 763 F. Supp. 2d 615, 623 (S.D.N.Y. 2011), on reconsideration, No. 08 CIV. 6181 DC, 2011 WL 3209521 (S.D.N.Y. July 27, 2011) (awarding back wages to plaintiff employee who expressly agreed to work solely for tips, even though evidence showed she received substantially more than minimum wage in tips). Evidence on this factor weighs in favor of the finding that Plaintiffs were Defendants' employees.

## V. DEFENDANTS' INVESTMENT INTO YELLOW ROSE GREATLY EXCEEDS PLAINTIFFS' INVESTMENT IN WORK ATTIRE.

40.     The third factor as to the parties' relative investment greatly weighs in Plaintiffs' favor. Although Yellow Rose dancers, including Plaintiffs, were required to pay for their own makeup and performance attire, any such "investment" amounts are *de minimis* when compared to the amount of Defendants' investment into Yellow Rose. As Plaintiffs testified, other than dancer or "stripper" heels, which were required by Defendants for all entertainers, they only other purchase they made solely for the purpose of their work as an entertainer at Yellow Rose was dance attire; together with makeup, hair products, and other toiletries—items Plaintiffs testified they would purchase for personal use regardless of working as a dancer—these expenditures totaled several hundred dollars ever few months, if that. Ramon Depo. 83:3:17, 84:1-16; Heath Depo. 74:10-17; Wilder Depo. 120:21-122:5; Langley Depo. 49:3-10, 50:31-51:12; Headrick Depo. 92:15-93:9.

41.     On the other hand, as previously stated, Yellow Rose—not Plaintiffs or entertainers of the Club—pays for the facilities, maintenance of the facilities (e.g., lighting, electrical, air conditioning, painting), utilities, furniture and fixtures, insurance, licensing, food and beverages and other supplies

or goods the Club, and payroll for all Club workers or staff other than entertainers. M. Persinger Depo. 56:24-59:5, 60:3-61:2; *see also* Ex. O, Defendant RPM's Ans. to Rog No. 17, Pl.'s Second Set of Rogs; Ex. S, Summary of Yearly Expenditures. As admitted by RPM in its interrogatory answer requesting monthly and annual expenditures of the Club on only *some* of the above-listed expenditures, from 2017 to 2020, Yellow Rose spends approximately $3 million or more per year on payroll/benefits, rent, utilities, maintenance, alcohol, food, licensing, and advertising for the Club. This does not include substantial expenditures for fixtures and furnishings or additional amounts expended on maintenance not reflected in Yellow Rose's interrogatory answer. Ex. S, Summary of Yearly Expenditures.  Based on Defendants' own figures and admissions, Defendants' financial investment in the Club exceeded $4-5 million each year between 2017 and 2020. *Id.*  Because Defendants do not own the building that Yellow Rose is located, Defendants paid over half a million dollars in rental/lease payments in 2018 and 2019 and just short of that in 2017 and 2020.  *Id.*

42.     Courts that have addressed this factor have universally concluded that a dancer's investment is minor when compared to the club's investment. S*ee Circle C.*, 998 F.2d at 328 ("A dancer's investment in costumes and a padlock is relatively minor to the considerable investment [the club] has in operating a nightclub" and the club's investment is "obvious."); *see also Priba Corp.*, 890 F.Supp. at 593 (entertainers make no investment aside from choosing what clothing to wear, and "but for defendants' provision of a lavish work environment, the entertainers at the club likely would earn nothing.").  This factor weighs in Plaintiffs' favor.

## VI.    NO SPECIAL SKILL IS REQUIRED TO PROVIDE ADULT ENTERTAINMENT DANCES

43.     The fourth factor is whether the service rendered requires a special skill. Other courts have found that adult entertainers' dancing requires no special skill. *Clincy, Inc.,* 808 F.Supp.2d at 1348. Courts across the country, including the Fifth Circuit, have unanimously ruled that dancers are not skilled workers under the economic realities test.[4] The same conclusion must be reached in this case

---

[4] *See Circle C.*, 998 F.2d at 328 (5th Cir. 1993) (holding that "dancers do not exhibit the skill or initiative indicative of

where the evidence shows there were no special skills or requirements for dancer applicants at Yellow Rose. The Club's "operating owner," Mr. Joseph and general manager, Mr. Gonzales, testified that dancers are not required to have either prior work experience in the adult entertainment industry or prior dance experience. Ex. K, Joseph Depo. 27:11-19; Gonzales Depo. 32:14-33:9. Mr. Gonzales, also confirmed that, when applying to work as a dancer at the Club, there is not required audition, describing a very cursory, non-intensive application and "interview" process for applicants, who can simply present to the Club, ask for "any manager on duty" and submit the necessary forms of identification and paperwork and "if everything checks out, then she's good to go." *Id*.; Gonzales Depo. 32:14-33:9. With the exception of Wilder, none of the other Plaintiffs were required to submit to any "audition" before being hired to work as an entertainer at Yellow Rose.  Although Plaintiff Wilder requires being subjected to some sort of "audition" process, she confirmed that the "audition" entailed nothing more putting on the performance attire she planned to wear to perform at the Club  and then, also becoming topless so the manager could observe and approve of the applicant's appearance both with her top on and topless before giving her the necessary paperwork to complete and sign to start working at the Club.  Wilder Depo. 74:25-75:10. Plaintiffs generally testified that no special skills, other than "people skills" are needed to be a dancer/entertainer at Yellow Rose.  Ramon Depo. 112:16-20; Wilder Depo. 146:13-22; Headrick Depo. 99:17-23; Harris Depo. 133:4-14; Heath Depo. 62:6-7, 62:13-15. This factor unequivocally weighs in favor of Plaintiffs.

**VII.    PLAINTIFFS WERE HIRED TO WORK AT YELLOW ROSE INDEFINITELY**

44.    The fifth factor is the degree of permanency and duration of the working relationship.

---

persons in business for themselves."); *McFeeley*, 825 F.3d at 271-72 (4th Cir. 2016) ("there is no special skill required to be an exotic dancer"); *Schofield v. Gold Club Tampa, Inc.,* No. 8:19-cv-3097-VMC-TGW, 2021 WL 533540, at *9 (M.D. Fla. Feb. 12, 2021); *Levi v. Gulliver's Tavern, Incorporated,* No. 15-cv-216-WES, 2018 WL 10149710, at *5 (D.R.I. Apr. 23, 2018); *Burrell v. Toppers Int'l, Inc.,* No. 3:15-CV-125 (CDL), 2017 WL 1395612, at *2 (M.D. Ga. Apr. 18, 2017) ("the only criteria on which entertainers are selected are physical attractiveness and a willingness to disrobe"); *Stevenson*, 2013 WL 6880921, at *9 ("Although different entertainers may possess varying degrees of skill, there is no indication that a high degree of skill or experience is necessary"); *Butler v. PP & G, Inc.,* No. CIV.A. WMN-13-430, 2013 WL 5964476, at *5 (D. Md. Nov. 7, 2013); *Clincy v. Galardi South Enter., Inc.,* 808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011); *Thompson*, 779 F.Supp. 2d at 150-51 (D.D.C. 2011); *Morse,* No. 1:08-cv-1389-WTL-JMS, 2010 WL 2346334, at *5; *Harrell,* 992 F.Supp. at 1350-51.

Relationships with a club that extend over one year can signify permanence. *See Clincy, Inc.*, 808 F.Supp.2d at 1348. As corroborated by Defendants' own records, Plaintiffs Langley and Harris worked at Yellow Rose consistently from May and April of 2015 until September 21, 2020, Langley Depo. 84:13-18; Ex. C-2, YellowRose_000166, YR_000207, YR_000261; Harris Depo. 9:8-12,  55:4-11; Ex. D-2, YR_000268, YR_000309, YR_000357, when they were both fired by Defendant Eddie Gonzales. Harris Depo.: 53:10-55:11; Langley Depo. 84:33-88:11. Similarly, Plaintiff Vanessa Ramon worked at Yellow Rose consistently from August 19, 2015 to September 13, 2020. Ex. A, Ramon Depo. 130:15-25. Accordingly, Ramon, Harris, and Langley each worked at Yellow Rose for 5 years or more.  *Id*. Although Plaintiffs Heath, Wilder, Hopkins, and Headrick worked at Yellow Rose for shorter intervals, *see supra* at ¶ 7, Plaintiffs' work relationships with Defendants was restricted to any set period but, rather, could go on indefinitely.  Moreover, as noted by the district court in *Foster v. Gold & Silver Priv. Club, Inc.*, where the court granted a summary judgment that plaintiffs were employees within the meaning of the FLSA, "courts have consistently found exotic dancers to be employees under the FLSA despite the commonly transient nature of the industry." 2015 WL 8489998, at *5 (citing *Thompson,* 779 F. Supp. 2d at 150 ("Many of the courts that have found exotic dancers to be employees under the FLSA did so despite finding the employment relationship lacked a high degree of permanence."). As the Fifth Circuit explained in *Circle C,* "….most dancers have short-term relationships with Circle C. **Although not determinative,** the impermanent relationship between the dancers and Circle C indicates non-employee status. The transient nature of the work force is not enough here to remove the dancers from the protections of the FLSA. *Circle C. Invs.,* 998 F.2d at 328–29.

**VIII.    A**DULT **E**NTERTAINMENT **D**ANCING, **I**S AN **I**NTEGRAL **P**ART OF**D**EFENDANTS' **B**USINESS.

45.    The sixth factor is the extent to which the service rendered is an integral part of thealleged employer's business. *Herman,* 161 F.3d at 303; *Amiable*, 20 F.3d at 444. "Courts have routinely noted that the presence of exotic dancers [is] 'essential,' or 'obviously very important,' to the success of a

topless nightclub." *Butler,* 2013 WL 5964476, at *5 (D. Md. Nov. 7, 2013) (citing *Harrell* 992 F.Supp. at 1352 (M.D. Fla. 1997)); *Martin v. Circle C. Invs., Inc.,* No. MO-91-CA-43, 1991 WL 3382389, at *4 (W.D. Tex. 1991). In *Hart,* the court stated, in considering the club owners' argument that "the Club's restaurant, bar, and televisions served to attract customers," that "[n]o reasonable jury could conclude that exotic dancers were not integral to the success of a club that marketed itself as a club for exotic dancers." 967 F. Supp. 2d at 921 (S.D.N.Y. 2013).   In *Harrell*, the district court noted that "[e]xotic dancers are obviously essential to the success of a topless nightclub." *Harrell*, 992 F.Supp. at 1352 ("the Court thinks it obvious that the continued success of [the club] depends to an appreciable degree upon its provision of stage and table dances") ("When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the worker who performs those services is more likely to be considered an employee than an independent contractor."). Finally, in *Martin v. Circle C.,* a case out of the Western District of Texas, the court reasoned that unlike shoe shine boys at an airport, topless dancers are the "main attraction" at a topless nightclub and "obviously very important" to the business of the nightclub. 1991 WL 338239, at *4.

46.     At Yellow Rose, dancers are the primary source of entertainment, per the Club's own website, which promotes itself as being "the #1 hot spot for live adult entertainment, providing patrons ***with the world's most beautiful entertainers*…** ."   *See* Ex. Q, YR Website. The stage where dancers perform is prominent and situated as the centerpiece of the entire Club. Ex. P, Yellow Rose Google Page Photo. Plaintiffs were the primary attraction and the primary form of entertainment offered as dancers at Yellow Rose, and an integral part of Defendants' live adult entertainment Club.  The sixth factor weighs in favor of Plaintiffs.

## **CONCLUSION AND PRAYER**

47.     On balance, it is clear that each factor under the economic reality test points toward the conclusion that, as a matter of economic reality, Plaintiffs were economically dependent on Yellow Rose and employees under the law entitled to FLSA protections. Plaintiffs' sufficient and competent

summary judgment evidence on each of the economic realities test factors supports partial summary judgment.  Like countless courts before it, this Court should find that Plaintiffs were employees under the FLSA and thus, misclassified by Defendants as independent contractors as a matter of law.

WHEREFORE, Plaintiffs pray the Court grant *Plaintiffs' Motion for Partial Summary Judgment and any*  other relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**ELLZEY & ASSOCIATES, PLLC**

 */s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh S. Montgomery
Texas Bar No. 24052214
Ghazzaleh Rezazadeh
Texas Bar No. 24072301
1105 Milford Street
Houston, Texas 77006
Office: (713) 322-6387
Facsimile: (888) 276-3455
jarrett@ellzeylaw.com
leigh@ellzeylaw.com
ghazzaleh@ellzeylaw.com

John Kristensen *(Pro Hac Vice)*
California Bar No. 224132
**CARPENTER & ZUCKERMAN**
(*formerly with Kristensen LLP*)
8827 W. Olympic Blvd.
Beverly Hills, California 90211
Tel.: (310) 507-7924
Fax: (310) 858-1063
kristensen@czrlaw.com

**ATTORNEYS FOR PLAINTIFFS**

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on December 23, 2021, a copy of the foregoing document was electronically served on the following counsel of record, in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas.

Casey T. Wallace
William X. King
Benjamin Allen
WALLACE & ALLEN, LLP
440 Louisiana, Suite 1500
Houston, Texas 77002
Phone: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
wking@wallaceallen.com
ballen@wallaceallen.com
***Counsel for Defendants***

   */s/ Jarrett L. Ellzey*
Jarrett L. Ellzey

22