## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| NATALIE HEATH, BRENNA WILDER, TARA HEADRICK, KIARA HOPKINS, AMANDA HARRIS, VANESSA RAMON, ANDREA HARRIS, *Plaintiffs* | § § § § § § § § | |
| **v.** | § § | No. A-20-CV-00890-RP |
| TFS DINING, LLC, RPM DINING, LLC, JON PERSINGER, KENNY DOE, et. al., *Defendants* | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendants RPM Dining, LLC *d/b/a* the Yellow Rose, TFS Dining, LLC, ("TFS Dining") and Jon Persinger's ("J. Persinger," and collectively "Defendants"[1]) partial motion for summary judgment on the Fair Labor Standards Act overtime claims, Dkt. 44; Defendants' partial motion for summary judgment on employer status, Dkt. 45; Plaintiffs Natalie Heath, Brenna Wilder, Tara Headrick, Kiara Hopkins, Vanessa Ramon, Andrea Harris, and Amanda Langley's ("Plaintiffs") partial motion for summary judgment on employee status, Dkt. 46; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

---

[1] Defendants in this case include RPM Dining, LLC *d/b/a* the Yellow Rose, TFS Dining, LLC J. Persinger, Kenny Meyers, Mike Persinger ("M. Persinger"), Eddie Gonzalez, Ricky Balderrama, and Jonathan Joseph. Dkt. 36, at 1.

## I.      BACKGROUND

Plaintiffs initiated this collective action alleging violations of the Fair Labor Standards Act of 1938's ("FLSA") minimum and overtime wage provisions on behalf of themselves and other employees who worked as entertainers at a strip club called the Yellow Rose between 2017 and 2020, and were allegedly improperly classified as independent contractors. Dkt. 36, at 1-2. Plaintiffs were hired by managers at the club, who conducted a "small" interview and provided dancers with the paperwork necessary for a background check. Dkts. 46-20, at 3; 48-20, at 10. All dancers signed the Yellow Rose Entertainer License Agreement, which disclaims any "employee/employer relationship" between the Plaintiffs and the club. Dkts. 46-17, at 7-8; 46-2; 46-4; 46-6; 46-9; 46-12; 46-14; 46-16; *see also* 46-2, at 4 ("Nothing in this Agreement shall be construed so as to create an employee/employer relationship between the parties.").

Certain procedures governed the dancers' work at the Yellow Rose, though the parties dispute the exact contours of the relationship between the parties. While no one at the Yellow Rose set a schedule for the dancers, certain Plaintiffs testified that they were required to complete at least four to six hours every shift—though Defendants dispute that there was any minimum hour requirement. Dkts. 45-5, at 12; 45-9, at 15; 45-11, at 27; 45-3, at 19; 46-3, at 10; 46-5, at 4 ("they wouldn't let you leave before the six-hour mark, the six- or seven-hour mark."); 46-8, at 6, 14; 46-13, at 6 ("the shifts were 6 hours each."); 46-7; 46-10. Regardless of any minimum hour requirement per shift, the Yellow Rose's timekeeping records, along with Plaintiffs'

2

discovery responses, reveal that no plaintiff worked more than 40 hours per week during the relevant time frame. Dkts. 44-1; 44-2, at 4; 44-4; 44-5, at 4; 44-7; 44-8, at 4; 44-10; 44-11, at 5; 44-13; 44-14, at 6; 44-16; 44-17, at 4; 44-19; 44-20, at 4.

Upon arriving to work, Plaintiffs had to check in with other Yellow Rose employees, such as the DJ, "door girl," or managers, and pay the Yellow Rose a "daily license fee," sometimes also referred to as a "house fee," which increased the later a dancer arrived at the club. Dkts. 46-1, at 4-5; 46-2, at 3; 46-17, at 4-6; 46-27. The Yellow Rose instructed dancers of expectations for their performance and prices by posting fliers in their dressing room, and by verbally informing dancers of club policies. Dkts. 46-8, at 4-5; 46-3, at 4. For example, though in dispute, Plaintiffs testified that they were required to perform on stage when the DJ called their name, and were instructed by management to remove their tops by the second song of their performance on stage—though owner M. Persinger, despite admitting to the existence of signs in the dressing room instructing dancers when to remove their tops, insists that getting topless on stage was "totally up to the girls." Dkts. 46-8, at 4-5, 46-3, at 4. If a dancer did not want to perform on stage, Plaintiffs testified that they could instead pay the club a "skip fee." Dkts. 46-1, at 5; 46-3, at 10; 46-13, at 7. Defendants attempt to dispute the fact that dancers were required to perform on stage or pay a fee, *see* Dkt. 48, at 12, though their own witness testified that dancers had to perform "at least a full song" per shift. Dkt. 48-20.

Plaintiffs testified that the Yellow Rose set prices for lap dances, VIP, and cabana areas, which customers paid directly to the club in advance. Dkts. 46-1, at 5-

6, 46-8, at 10-12, 46-17, at 9-10. Dancers received a portion of the fee for VIP and cabana rentals only after the club took out a percentage for itself. Dkt. 46-8, at 10-12. Defendants, however, insist that the price for a lap dance in Texas is standardized, and that dancers could negotiate their own prices with individual clients for spending time with them in VIP rooms or cabanas. Dkts. 48-19, at 14; 48-20, at 13. While certain dancers confirmed that they negotiated prices with customers, managers still set an upper limit on how much dancers could charge, and could withhold payment from dancers through the use of "funny money" or "Rose dollars," which were at times given to dancers in lieu of cash. Dkts. 48-3, at 7; 48-14, at 20.

Upon finishing a shift for the night, dancers had to obtain a "bye-bye" slip signed by both the DJ and management before they could leave. *See, e.g.,* Dkts. 46-5, at 4; 46-13, at 10. Plaintiffs testified that they were required to tip the Yellow Rose employees, such as managers, the DJ, and the "door girl," before leaving, Dkts. 46-1, at 4-6; 46-5, at 4-5; 46-3, at 10; 48-19, at 21-22, though M. Persinger testified that he "beat[s] it into our managers that tips are optional." Dkt. 48-20, at 20; *see also* Dkt. 48-19, at 14. The parties do not dispute that the Yellow Rose set its operating hours and covers the cost of maintaining the club facility. Dkt. 48-19, at 5, 16. Managers have the authority to hire and fire dancers, and control who can enter the club as a customer. Dkts. 46-5, at 9; 46-17, at 7-8; 48-20, at 7.

Defendants J. Persinger, M. Persinger, and Jonathan Joseph co-owned RPM Dining, which does business as the Yellow Rose,[2] during the time period relevant to

---

[2] The undersigned will hereafter refer to RPM Dining as "the Yellow Rose." RPM Dining is the only entity that does business as the Yellow Rose in Austin. Dkt. 45-1, at 4.

Plaintiffs' claims. Dkt. 46-24, at 6. TFS Dining, also named as a defendant in Plaintiffs' first amended complaint, is a separate entity that was created in anticipation of opening a club in Dallas, which never came to fruition. Dkt. 45-2, at 1. The parties dispute the role that J. Persinger played in the day-to-day operations of the Yellow Rose. *Compare* Dkt. 45-1, at 4; Dkt. 45-2, at 1 *with* Dkt. 49, at 11-15.

Plaintiffs initially filed this lawsuit against Defendants TFS Dining, the Yellow Rose, J. Persinger, and Kenny Doe, Dkt. 1, and later added the remaining defendants through their first amended complaint. Dkt. 36. The parties each moved for partial summary judgment on the issue of employee status, and Defendants moved for summary judgment on Plaintiffs' overtime claims. Dkts. 44-46. The undersigned will evaluate each of the motions below.

## II.       LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    DISCUSSION

### A.    Defendants' Partial Motion for Summary Judgment on Overtime Claims

Defendants first move for summary judgment on Plaintiffs' overtime claims, arguing that the record demonstrates that no plaintiff worked in excess of 40 hours

per week at the Yellow Rose during the relevant time period. Dkt. 44, at 1. In their first amended complaint, Plaintiffs alleged that they "were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and entertain its customers for longer than eight (8) hours per shift," and brought a cause of action against Defendants for violations of the FLSA overtime provision in their amended complaint. Dkt. 36, at 11, 21-22; *see also* 29 U.S.C. § 207. In support of their motion, Defendants point to the Yellow Rose's timekeeping records, as well as interrogatory responses and deposition testimony from Plaintiffs, showing that no plaintiff worked in excess of 40 hours per week during the statutory time frame. Dkt. 44, at 4-8, *see also* Dkts. 44-1; 44-2, at 4; 44-4; 44-5, at 4; 44-7; 44-8, at 4; 44-10; 44-11, at 5; 44-13; 44-14, at 6; 44-16; 44-17, at 4; 44-19; 44-20, at 4.

Plaintiffs did not respond to Defendants' partial motion for summary judgment regarding their overtime claims. Despite their failure to respond, however, the Court may not automatically grant summary judgment without assuring that no material fact issues exist. Fed. R. Civ. P. 56(e) advisory committee's note; *Eversley v. MBank of Dall.*, 843 F.2d 172, 174 (5th Cir. 1988). Indeed, if a moving party fails to meet its initial burden, the court must deny the motion for summary judgment even if there is no response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). However, when no response is filed to a motion for summary judgment, the Court may take the movant's uncontroverted factual assertions as true. *Eversley*, 843 F.2d at 174.

In the FLSA context, plaintiffs bear "'the burden of proving that [they] performed work for which [they were] not properly compensated.'" *U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 442 (5th Cir.), *reh'g denied*, 997 F.3d 1258 (5th Cir. 2021) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946) (superseded by statute on other grounds)). Typically, plaintiffs may rely on their employer's timekeeping records to demonstrate that they were not properly compensated for work they performed. *Mt. Clemens*, 328 U.S. at 686-87. If the employers' records are inadequate or inaccurate, plaintiffs may meet their burden by producing "sufficient evidence to show the amount and extent of that [allegedly uncompensated] work as a matter of just and reasonable inference." *Id.* at 687.

Here, Defendants presented timekeeping records demonstrating that none of the Plaintiffs worked over forty hours per week during the relevant time period. Dkts. 44-1; 44-4; 44-7; 44-10; 44-13; 44-16; 44-19. Defendants also attached to their motion Plaintiffs' own interrogatory responses and deposition testimony confirming that none of them worked overtime during their employment with the Yellow Rose within the statutory timeframe. Dkts. 44-2, at 4; 44-3, at 25; 44-5, at 4; 44-6, at 21 ("Q. Can you think of any instances in which you worked more than 40 hours in any given week? A. No."); 44-7; 44-8, at 4; 44-9, at 15 (Q. And you never worked in excess of 40 hours at the Yellow Rose in any given week, correct? A. Correct."); 44-11, at 5; 44-12, at 28 ("Q. Did you ever work more than 40 hours in any -- any seven-day span of time while you were at the Yellow Rose? A. Not within the time period that's being looked at right now."); 44-14, at 6; 44-17, at 4; 44-18, at 33, 39 ("Q. Did you ever work in

excess of 40 hours in any given seven-day period of time at the Yellow Rose? A. I do not believe so."); 44-20, at 4.

Plaintiffs have not responded to Defendants' motion either challenging the accuracy of the timekeeping records, or offering testimony or other evidence to dispute the statements contained in their own interrogatory responses or deposition testimony. As such, the undersigned finds that Defendants' proffered facts regarding Plaintiffs' overtime hours are undisputed. *See Eversley*, 843 F.2d at 174. Because Plaintiffs have not met their burden of establishing that they worked overtime, or that there is a dispute of fact as to whether they worked overtime, the undersigned will recommend that the District Court grant Defendants' partial motion for summary judgment on the FLSA overtime claims.

## B. Defendants' Partial Motion for Summary Judgment on Employer Status

Defendants TFS Dining and J. Persinger next move for summary judgment on their categorization as employers for the purposes of liability under the FLSA. Dkt. 45. As an entity created in anticipation of opening a club in Dallas, TFS Dining argues that it "is not related to The Yellow Rose in Austin, Texas, in any meaningful capacity," and thus cannot be considered one of Plaintiffs employers under the statute. *Id.* at 4-5. J. Persinger further argues that his status as an owner of the Yellow Rose is insufficient to render him Plaintiffs' employer for the purposes of establishing liability under the FLSA. *Id.* at 5-11. Plaintiffs, while failing to respond to arguments regarding TFS Dining, contend that because "[J.] Persinger directly or

indirectly exerted operational control over Yellow Rose … [he] may be considered an 'employer' under the FLSA." Dkt. 49, at 11.

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts in the Fifth Circuit use the "economic reality" test to determine employer status, which considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (internal citation removed). While Plaintiffs need not establish each element of the "economic reality" test to prove that J. Persinger was their "employer" as defined by the FLSA, they must nonetheless show that his role as part-owner coincides with operational control over dancers at the Yellow Rose. *Gray*, 673 F.3d at 357.

With regard to hiring and firing of dancers, Defendants contend that "Jon Persinger has not approved a new dancer in decades, nor has he fired anyone at The Yellow Rose." Dkt. 45, at 6. Indeed, J. Persinger testified that although he participates in the hiring of managers in consultation with other owners, he gives no input on the hiring or firing of dancers. Dkt. 45-1, at 6. Plaintiffs emphasize that J. Pesinger had the power to vote to approve the hiring of managerial staff at the Yellow Rose, arguing that "the fact that he hired individuals who were in charge of dancers/entertainers, including Plaintiffs, is a strong indication of control," and point to a series of text messages between Plaintiff Andrea Harris and J. Persinger

regarding her termination from the club. Dkts. 49, at 7, 15 (citing *Donovan v. Grim Hotel, Inc.*, 747 F.2d 966, 971 (5th Cir. 1984), *cert. denied*, 471 U.S. 1124 (1985)); 49-6; 49-7.

In *Grim Hotel*, cited by Plaintiffs, the Fifth Circuit found that the president of a corporation that owned five hotels whose employees brought a FLSA lawsuit was an "employer" under the statute in part because he "personally selected the manager at every hotel." *Grim Hotel*, 747 F.2d at 97. Here, in contrast, while J. Persinger certainly has some power to "authorize compliance with the Fair Labor Standards Act," no evidence on the record demonstrates that he personally selected managers even if he participated in hiring decisions in conjunction with the other owners. *Id.* And as Defendants point out, in *Gray* the Fifth Circuit explicitly stated that an owner's joint decision with co-owners to hire or fire managers "proves nothing about whether [he] had the authority individually to control employment terms of lower-level employees." *Gray*, 673 F.3d at 355-56 ("a status-based inference of control cannot alone suffice to create a genuine fact issue whether [defendant] had power to hire and fire bartenders."). Moreover, J. Persinger testified that managers did not consult him regarding the hiring of entertainers at the club. Dkt. 45-2, at 6.

Plaintiffs also point to two series of messages between J. Persinger and Harris "to demonstrate the active role Mr. Persinger took in the management of Yellow Rose's personnel, including dancers/entertainers." Dkts. 49, at 7, 49-6, 49-7. In one text message exchange, J. Persinger informed Harris that she was not "banned" from the club, and apologized that Harris "had to deal with a drunk manager." Dkt. 49-7.

J. Persinger further informed Harris that another dancer, "Megan," was in fact banned from the club because she "openly bashed [his] company on social media." *Id.* at 1 ("Megan openly bashed my company on social media. She is dead to me."). In another Facebook messenger thread between Harris, J. Pesinger, and his wife, Harris discussed a dispute with a customer, her IRS tax forms, and updated the couple on her IVF treatments. Dkt. 49-6. As Defendants point out, however, these messages "are too paltry to support an inference of control by" J. Persinger over the hiring and firing of Plaintiffs, and in any event, only relate to Harris's relationship with J. Persinger. Dkt. 50, at 3; *Gray*, 673 F.3d at 356. The undersigned thus finds that the first factor weighs against J. Persinger being considered Plaintiffs' employer under the FLSA.

Defendants argue that the second factor similarly weighs against a finding that J. Persinger was Plaintiffs' employer because he did not set schedules for or control working conditions for dancers, and only came to the club about once a week to "oversee construction or for his own social reasons." Dkts. 45, at 7-8; 45-1, at 6. Plaintiffs insist that because the Yellow Rose's operating hours are determined by the club's owners, including J. Persinger, and dancers are only allowed to work during those hours "even if customers are willing to stay later to pay for dances," "Jon Persinger directly or indirectly participated in many facets of control" over entertainers at the Yellow Rose. Dkts. 46, at 8; 49, at 15. Yet because Plaintiffs presented no evidence that J. Persinger personally set their schedules, or otherwise

12

exerted control over their working conditions, the second factor also weighs against J. Persinger's being considered Plaintiffs' employer.

Defendants next contend that there is no evidence that the third factor of the "economic reality" test, whether the alleged employer set the rate or method of payment, indicates that J. Persinger served as Plaintiffs' employer under the FLSA. Dkt. 45, at 9-10. Plaintiffs only response is to point out that J. Persinger gives input, along with the other owners, on the compensation for managers at the Yellow Rose. Dkts. 49, at 5; 49-3, at 5. Yet, as noted above, J. Persinger's "participation in joint decisions" regarding manager compensation "proves nothing" about whether he had "the authority individually to control employment terms of lower-level employees." *Gray*, 673 F.3d at 355. In contrast to cases where courts have found that an alleged employer had "ultimate control over [employee] wages," here Plaintiffs have presented no evidence that J. Persinger personally exercised any control over how dancers made money at the club. *Grim Hotel Co.*, 747 F.2d at 972. The third factor thus also weighs against J. Persinger's being considered Plaintiffs' employer for the purposes of liability under the FLSA.

With regard to the fourth factor, Defendants argue that J. Persinger cannot be considered an "employer" because maintaining personnel records is not something he "handles at all." Dkt. 45, at 10. Indeed, J. Persinger testified that this wife, Beth Persinger, handled bookkeeping for the Yellow Rose, including by maintaining dancer employment records. Dkt. 45-1, at 8. Moreover, none of the dancers identified J. Persinger as someone who maintained their records, or from whom they could attain

13

such records. Dkts. 45-5, at 5, 36; 45-9, at 23-24; 45-11, at 27. Plaintiffs cite *Zheng v. Liberty Apparel Company, Inc.*, for the proposition that a person can be an "employer under the FLSA even when [he] does not hire and fire [his] joint employees, directly dictate their hours, [maintain their employment records,] or pay them." 355 F.3d 61, 69-71 (2nd Cir. 2003).

Yet the Second Circuit's instruction in *Zheng* that the "economic reality" test encompasses six more factors than those identified by the Fifth Circuit in *Gray* is not mandatory authority for this Court. *Zheng*, 355 F.3d at 68 ("we have never suggested that, in analyzing joint employment, the four *Carter* factors alone are relevant, and that other factors that bear on the relationship between workers and potential joint employers should be ignored." (citing *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir.1984))). Moreover, Plaintiffs have failed to identify any authority from this circuit suggesting that the undersigned should consider any factors apart from the four adopted by the Fifth Circuit, even when liberally construing the definition of employer under the FLSA to include someone who "effectively dominates [a business's] administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees." *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (internal citation removed).

Plaintiffs further cite two cases within this circuit to suggest that summary judgment is not proper where "there is a dispute as to the presence or absence of one or more factors, or where the factors must be weighed against each other." Dkt. 49, at 11; *Solis v. UPM, Inc.*, Civ. No. H-08-1517, 2009 WL 4043362, at *6-7 (S.D.Tex.

14

Nov. 19, 2009); *Osborn v. Computer Sciences Corp.*, Civil No. A-04-CA-158-LY, 2005 WL 5878602, at *2 (W.D. Tex. 2005). In those cases, however, courts found that fact issues precluded summary judgment on the issue of employer status where the "extent to which [defendants] supervised workers, set compensation, or had hiring and firing authority [wa]s unclear" or the movants' "summary-judgment proof raise[d] fact issues regarding [the alleged employers'] 'power to act, on behalf of the corporation vis-à-vis' [plaintiff]." *Solis*, 2009 WL 4043362, at *6; *Osborn*, 2005 WL 5878602, at *2 (quoting *Reich*, 998 F.2d at 329). Here, in contrast, Plaintiffs have presented no evidence to raise a genuine factual dispute as to any factor relevant to determining whether J. Persinger may be properly considered Plaintiffs' employer under the FLSA.

Because all four factors relevant to the question of whether J. Persinger served as Plaintiffs' employer weigh in his favor, the undersigned will recommend that the District Court grant the partial motion for summary judgment on J. Persinger's employer status. Additionally, given that Plaintiffs did not respond to arguments relating to TFS Dining's employer status, the undersigned considers Defendants' submitted facts undisputed, and finds that TFS Dining similarly does not qualify as Plaintiffs' employer for the purposes of liability under the FLSA. *See Eversley*, 843 F.2d at 174. The undersigned therefore will recommend that the District Court grant Defendants' partial motion for summary judgment, and dismiss Plaintiffs' claims against TFS Dining and J. Persinger with prejudice.

C.     **Plaintiffs' Partial Motion for Summary Judgment**

Plaintiffs move for partial summary judgment on the related issue of whether Defendants[3] "misclassified [Plaintiffs] as independent contractors when they were in fact employees at Defendants' club, [the] Yellow Rose." Dkt. 46, at 1. Plaintiffs insist that because they were "entirely dependent on [the] Yellow Rose for their economic opportunities, and Defendants exerted significant control over Plaintiffs while they were working as dancers," "the totality of the circumstances demands that Plaintiffs were employees of Yellow Rose as a matter of law." *Id.* at 6. Defendants respond that summary judgment must be denied as against Defendants M. Persinger, Jonathan Joseph, Eddie Gonzales, Ricky Balderrama, and Kenny Myers because they were added to this lawsuit through Plaintiffs' first amended complaint, but were never served. Dkt. 48, at 7. Defendants further argue that genuine disputes of material fact preclude summary judgment on whether Plaintiffs were employees of the Yellow Rose. *Id.* at 8-21.

Initially, the undersigned will recommend denial of Plaintiffs' motion for summary judgment as against Defendants M. Persinger, Jonathan Joseph, Eddie Gonzales, Ricky Balderrama, and Kenny Myers for lack of service. The record in this case does not indicate that any of these individuals have been served with this lawsuit as required by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 4(m).

---

[3] Because the undersigned recommends that the District Court grant Defendants J. Persinger and TFM Dining's partial motion for summary judgment on the issue of employer status, *see* Section III(B), the undersigned will evaluate this motion as it applies to remaining Defendants the Yellow Rose, Kenny Meyers, M. Persinger, Eddie Gonzales, Ricky Balderrama, and Jonathan Joseph.

Moreover, Plaintiffs failed to address Defendants' contentions regarding the absence of service, and have thus waived any argument on whether it had in fact properly served Defendants M. Persinger, Jonathan Joseph, Eddie Gonzales, Ricky Balderrama, and Kenny Myers before moving for summary judgment against them.[4] *See* Dkt. 51; *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) ("failure to brief an argument in the district court waives that argument in that court" (citation omitted)); *see also Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)).

Plaintiffs also move for summary judgment against the Yellow Rose, an entity they argue exercised significant control over dancers at the club so as to render Plaintiffs its employees. Dkt. 46, at 16-25. In evaluating employee status under the FLSA, the Court analyzes "five non-exhaustive factors" including: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and

---

[4] Under Federal Rules of Civil Procedure 4(m), Plaintiffs were required to serve Defendants M. Persinger, Jonathan Joseph, Eddie Gonzales, Ricky Balderrama, and Kenny Myers within 90 days of filing a complaint against them. *See* Dkt. 36 (filed May 5, 2021); Fed. R. Civ. P. 4(m). Under this rule, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id*. The undersigned thus recommends that the District Court order that Plaintiffs, within fourteen days of the issuance on an order on this report and recommendation, show cause for their failure to serve these defendants.

initiative required in performing the job; and (5) the permanency of the relationship." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (citations omitted). The Fifth Circuit has also recently considered a sixth factor used in other circuits: the extent to which the plaintiff's work is "an integral part" of the alleged employer's business. *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020). No single factor is determinative, and the focus is on "'an assessment of the 'economic dependence' of the putative employees, the touchstone for this totality of the circumstances test.'" *Parrish*, 917 F.3d at 380 (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043-44 (5th Cir. 1987)). The undersigned will address each factor below.

The first factor asks what degree of control the Yellow Rose exercised over Plaintiffs, which here is neutral. On the one hand, Plaintiffs set their own schedules, negotiated certain prices with customers, and were able to work for other clubs, Dkts. 45-5, at 12; 45-9, at 15; 45-11, at 27; 45-3, at 19, all of which are indicative of independent contractor status. *Nelson v. Texas Sugars, Inc.*, 838 F. App'x 39, 42 (5th Cir. 2020); *Johnson v. N. Texas Dancers, LLC*, No. 7:20-CV-00116-O, 2021 WL 2077649, at *4 (N.D. Tex. May 24, 2021). On the other hand, however, Plaintiffs were required to check in and out of work, perform "at least one song" on stage during their shift, were instructed by signs posted in the dressing rooms that they had to remove their tops by their second song on stage, and were at times paid in "funny money" the Yellow Rose had to cash out for them,[5] and were expected to pay tips to other

---

[5] One dancer testified to the practice of withholding "funny money," or "Rose dollars," during a probationary period after a new dancer was first hired. Dkt. 48-14, at 20 (describing

employees based on their earnings. Dkts. 46-8, at 4-5; 46-3, at 4; 48-19, at 14; 48-20, at 10; *Johnson v. Houston KP, LLC*, No. 4:20-CV-663, 2022 WL 605802, at *4 (S.D. Tex. Mar. 1, 2022). While Defendants dispute whether tips to employees were required, the overwhelming testimony from Plaintiffs reveals that the practice of tipping Yellow Rose employees was expected of dancers. Dkts. 46-1, at 4-6; 46-3, at 10; 46-5, at 4-5; 48-19, at 21-22. Because Plaintiffs "enjoyed certain freedom" to pick their schedule, negotiate prices, and work for other clubs, but were also subject to rules or expectations regarding on-stage performances, payment, and tipping, the undersigned finds that this factor does not favor either party.

The second factor, the extent of the relative investments of the worker and the alleged employer, weighs in favor of Plaintiffs. The Yellow Rose does not dispute that the dancers' investments in their attire are "*de minimus* when compared to the amount" the Yellow Rose invests in the club, yet argues that the "side-by-side comparison method [used] in evaluating this factor" should take into account "the amount the alleged employer and employee each contribute to the specific job the employee undertakes." Dkt. 46, at 21; *Parrish*, 917 F.3d at 383; *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 847 (5th Cir. 2010). The Yellow Rose cites *Nelson* for the proposition that its investment in the club is "not necessarily" comparable to Plaintiffs' investment in their appearance because décor, food, and alcohol are not "essential for dancers to perform their work." 838 F. App'x at 42 (affirming jury verdict finding that dancers did not qualify as employees under the FLSA).

---

"probation period" for new dancers whereby the Yellow Rose "won't cash out [Rose dollars] right away just to make sure [the new dancers is] not crazy.").

While the Yellow Rose is certainly correct that its customers primarily visit the club to see the dancers perform, rather than for the club facilities, the Yellow Rose's significant investments in the club are nonetheless "critical to" Plaintiffs' "being able to complete the[ir] job[s]." Dkts. 46-24, at 4; 48, at 16-17; 46-25; 48-19, at 5, 16; *Parrish*, 917 F.3d at 383. The Yellow Rose's insistence that Plaintiffs' inability to explain the exact role the club's food and decor played in their ability to attract clients ignores the simple reality that absent the Yellow Rose's "provision of all costly necessities" to maintain and promote the club, the dancers "could not operate." Dkts. 46-24, at 4-8; 48, at 16-17; 48-19, at 5, 16; *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1314 (5th Cir. 1976); *N. Texas Dancers*, 2021 WL 2077649, at *4 (relative investment weighed in favor of exotic dancers who "made no investment or other financial contribution to the operation" of the club). In any event, Plaintiffs' limited investments in their appearance pale in comparison to the large-scale investments the Yellow Rose made to promote exotic dancing as the main feature in its club. Dkts. 48-5, at 21; 48-11, at 22-23; 48-14, at 31-32; *Houston KP,* 2022 WL 605802, at *4 (extent of relative investment favored employee status where plaintiffs' investment limited to "their own makeup and performance attire").

The third factor, the degree to which the worker's opportunity for profit or loss is determined by the alleged employer, likewise weighs in favor of Plaintiffs. Though dancers could take steps to increase their earnings through their "appearance, customer selection, interaction, and maintenance, allocation of their time to prospective customers, [and by] leveraging of the club's various spaces," the club

nonetheless exercised significant control over Plaintiffs' opportunity for profit or loss by setting operating hours, controlling who could enter the club as a customer, setting procedures for payment, as well as regulating prices for private dances. Dkts. 48, at 18-19; 46, at 19-20; 46-1, at 5-6; 46-8, at 8, 10-12; 48-19, at 14; 48-20, at 13.

The Fifth Circuit has found this factor to weigh in favor of employee status where a club "exercises a high degree of control over a dancer's opportunity for profit" in the form of "control over determinants of customer volume." *Reich*, 998 F.2d at 324. Here, in addition to being responsible for "advertisement, location, business hours, maintenance of facilities, aesthetics, and inventory of beverages and food," the Yellow Rose also played a role in regulating pricing by setting rates for VIP and cabana area rentals, which were paid directly to the club in advance, preventing dancers from instructing clients on tips, and through the use of "Rose dollars" to withhold cash from new dancers. Dkts. 46-1, at 5-6; 46-8, at 8, 10-12 ("We can't tell [customers] what to tip."); 46-17, at 9-10; 48-14, at 20; *Reich*, 998 F.2d at 324. While Defendants presented testimony suggesting that prices for lap dances were negotiable, and that dancers often set their own prices for entertaining in private areas by negotiating with individual customers—managers appear to have nonetheless set parameters on payment and pricing. Dkts. 48-3, at 7 ("when Eddie became the general manager, he capped what we could charge"); 48-14, at 20; 48-19, at 14; 48-20, at 13. This factor weighs in favor of employee status.

The fourth factor, the skill and initiative required in performing the job, also weighs in favor of Plaintiffs. When evaluating this factor, courts consider whether

plaintiffs have "some unique skill set, or some ability to exercise significant initiative within the business." *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008). "Greater skill and more demonstrated initiative counsel in favor of [independent contractor] status," though the focus of this factor remains "whether the worker was economically-dependent" on the alleged employer. *Parrish*, 917 F.3d at 385-86. Plaintiffs argue that this factor weighs in their favor because "there were no special skills or requirements for dancer applicants," and they did not use any "special skills" during their work apart from "people skills." Dkt.46, at 22-23. The Yellow Rose counters that Plaintiffs did in fact demonstrate initiative by "working the floor" with their own choreography, outfits, and personality to locate customers. Dkt. 48, at 20. Yet the Yellow Rose's arguments regarding Plaintiffs' ability to take initiative to develop "customer rapport is not germane to the analysis." *Parrish*, 917 F.3d at 386 (internal citations omitted); *see also Reich*, 998 F.2d at 328 ("[T]he ability to develop and maintain rapport with customers is not the type of 'initiative' contemplated by this factor.").

Testimony from the Yellow Rose management reveals that no special skills or initiative were sought after during the employment application process. Dkts. 46-20, at 3; 48-20, at 10. Indeed, general manager Eddie Gonzalez testified that to be hired, dancers needed only present themselves to a club manager to conduct a "small" interview and submit paperwork for a background check. Dkt. 48-20, at 10. While one plaintiff, Brenna Wilder, testified that she participated in an audition process, this audition consisted of "getting in [her] dance clothes and being on stage … so basically

they can see that you look good." Dkt. 48-14, at 20 (describing manager saying "Let's see what you look like" in response to Wilder's employment inquiry). Because the Plaintiffs' "initiative is essentially limited to decisions involving her costumes and dance routine," the undersigned finds that they "do not exhibit the skill or initiative indicative of persons in business for themselves." *Reich*, 998 F.2d at 328. This factor weighs in favor of an employee-employer relationship.

The fifth factor, the permanency of the relationship, is neutral here. In *Parrish*, the Fifth Circuit noted that the impermanence factor encompasses "several relevant considerations," including whether Plaintiffs worked exclusively for the Yellow Rose, the duration of the relationship, and whether the work was performed on a "project-by-project" basis. 917 F.3d at 387-88; *see also Reich*, 998 F.2d at 328 (an "impermanent relationship between [plaintiff] dancers and [defendant nightclub] indicates non-employee status."). Plaintiffs argue that because their "work relationships with Defendants was [not] restricted to any set period but, rather, could go on indefinitely," this factor weighs in favor of finding an employee-employer relationship. Dkt. 46, at 23-24.

Indeed, the dancers' work was certainly not performed on a "project-by-project" basis, and three of the named plaintiffs worked at the Yellow Rose for terms of approximately five years. Dkts. 46-1, at 4; 46-5, at 8; 46-7; 46-8, at 3, 8; 46-9; *N. Texas Dancers,* 2021 WL 2077649, at *5 ("despite the often-transient nature of the work, Plaintiff and Defendant's relationship here over six years was sustained, consistent, and apparently permanent, weighing in favor of an FLSA employment relationship").

At the same time, two other plaintiffs testified to working at the Yellow Rose for shorter periods of time while working for other clubs, which the Fifth Circuit has counseled weighs against employee status. Dkts. 48, at 10-11; 48-5, at 5; 48-8, at 4-8; *Nelson*, 838 F. App'x at 43 ("arrangements that allow for movement from club to club and lack a set term weigh against employee status"). The undersigned finds this factor to be neutral; while certain Plaintiffs had long, exclusive tenures with the Yellow Rose, others testified to working for other clubs while performing for shorter period of time at the Yellow Rose.

Lastly, the undersigned finds that Plaintiffs are integral to the business of the Yellow Rose. Indeed, as a self-proclaimed "adult cabaret," dancers such as Plaintiffs, are undoubtably "the main focus of" the Yellow Rose's business. Dkt. 48, at 1; 46-25; *Hobbs*, 946 F.3d at 836. This factor thus weighs in favor of the parties having an employee-employer relationship under the economic realities test. *Nelson*, 838 F. App'x at 43 (acknowledging that "without the dancers, the [defendant] Club would just be a bar"); *Houston KP,* 2022 WL 605802, at *6 (finding exotic dancers to be integral part of "adult-oriented club" where defendants "point[ed] to no evidence suggesting that dancers do not provide integral services to their business model").

Evaluating the above factors in light of the "totality of the circumstances" surrounding Plaintiffs' work, the undersigned finds that Plaintiffs were employees rather than independent contractors of the Yellow Rose. *Hobbs*, 946 F.3d at 836. While certain questions remain as to the exact degree of control Defendants exhibited over the dancers and the permanency of the working relationship between the

parties, the remaining factors all favor Plaintiffs. In analyzing the five factors, we must not lose sight of economic reality. Here, the economic reality is that the dancers are not in business for themselves but are dependent upon finding employment in the business of others. The undersigned will recommend that the District Court grant Plaintiffs' partial motion for summary judgment as to the Yellow Rose.

## IV.    RECOMMENDATIONS

For the reasons set forth above, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' partial motion for summary judgment, Dkt. 44, and dismiss Plaintiffs' FLSA overtime claims with prejudice.

The undersigned further **RECOMMENDS** that the District Court **GRANT** Defendants' partial motion for summary judgment, Dkt. 45, and dismiss all FLSA claims against J. Persinger and TFS Dining with prejudice.

The undersigned finally **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Plaintiffs' partial motion for summary judgment, Dkt. 46. Specifically, the undersigned recommends that the motion be granted as to Defendant the Yellow Rose. The undersigned recommends that the motion be denied as to Defendants M. Persinger, Jonathan Joseph, Eddie Gonzales, Ricky Balderrama, and Kenny Myers, and that Plaintiffs be ordered to show cause for their failure to serve these defendants within fourteen days of the issuance of an order on this report and recommendation.

The referral of this case to the Magistrate Court should now be canceled.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED March 18, 2022.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE